```
REED E. SCHAPER (SBN 082792)
CURIALE DELLAVERSON
  HIRSCHFELD & KRAEMER, LLP
2425 Olympic Boulevard
Suite 550 East Tower
Santa Monica, CA  90404
Telephone:  (310) 255-0705
Facsimile:  (310) 255-0986

Attorneys for Defendant
EDUCATION MANAGEMENT
CORPORATION
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREG CAMPBELL,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>EDUCATION MANAGEMENT CORPORATION; and DOES 1 through 25, inclusive,<br><br>　　　　　　Defendants. | Case No.  08CV434 BTM (POR)<br><br>**RESPONSE OF DEFENDANT EDUCATION MANAGEMENT CORPORATION TO ORDER TO SHOW CAUSE RE: JURISDICTION ON REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(B); DECLARATION OF CAROL CAMPO** |

　　　　Defendant Education Management Corporation (hereinafter "EDMC" or "Defendant) hereby responds to this Court's Order to Show Cause.

## I.　　PROCEDURAL BACKGROUND

　　　　Plaintiff filed this action in San Diego Superior Court and served it on Defendant on February 7, 2008. Because there is complete diversity between the parties and, further, because the amount in controversy exceeds $75,000, Defendant removed the case to this Court on March 7, 2008. On March 10, 2008, this Court issued an Order to Show Cause concerning the issue of whether the jurisdictional minimum for diversity jurisdiction is met it this matter. Defendant contends that based on the information available, and referenced in this memorandum, the

## II. LEGAL ARGUMENT

In a case such as this, where removal is premised on diversity jurisdiction and where the Complaint is silent as to the amount in controversy, the removing party must establish through admissible evidence that it is "more likely than not" that the amount in controversy exceeds $75,000. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (relying on *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992). Here, the evidence establishes that the amount in controversy exceeds $75,000.

### A. Plaintiff's Lost Wages And Benefits Alone Will Satisfy The Amount In Controversy Requirement

In his Complaint and accompanying filings, Plaintiff artfully dodged stating the amount of damages he seeks from Defendant. Instead, Plaintiff asserted that he seeks damages for "the loss of wages, salary, benefits, raises, retirement, and additional amounts of money" (Cplt. ¶¶21, 25, 31) as well "humiliation, financial hardship, mental anguish, and emotional distress … in an amount according to proof at trial." (Cplt. ¶¶22, 26, 32).

Although Plaintiff does not specify his losses in wages, salary, etc., and lost employment benefits, they are readily apparent. At the time Plaintiff's employment ended, he had annual compensation of $50,000, which equates to $4,166.67 per month. (Campo Decl. ¶3). In addition, EDMC provided him with health care and related benefits worth $314.02 per month. (*Id.*). Plaintiff has not worked for EDMC since June 2007. (*Id.*).

Thus, as of today – only 9 months after his employment with EDMC ended – Plaintiff's alleged "substantial losses in earnings" and lost "employment benefits" alone exceed $40,000. Indeed, by October 2008, based on wages and benefits alone, Plaintiff's alleged damages for "losses in earnings" and lost "employment benefits" will exceed $75,000.

Lost wages to date, however, is not the sole component of potential damages

to establish that the amount in controversy exceeds $75,000. On both Plaintiff's wrongful termination claim and his Fair Employment and Housing Act, Cal. Govt. Code §12940, *et seq.* ("FEHA") claim, Plaintiff can recover, as back pay, his lost wages and benefits through the date of trial. *See, e.g., Rojo v. Kilger*, 52 Cal.3d 65, 80-81 (1990) (remedies for wrongful termination claim include lost wages through trial); *see also Commodore Home Systems, Inc. v. Superior Court*, 32 Cal.3d 211, 221 (1982) (same *vis a vis* claim for under FEHA). Undoubtedly, the trial in this case will take place after October 2008. Thus, Plaintiff's alleged lost wages and benefits through trial alone will exceed $75,000, as such damages are pled in his Complaint. *See, e.g., Lamke v. Sunstate Equip. Co., LLC*, 319 F. Supp. 2d 1029, 32 (N.D. Cal. 2004) (considering the plaintiff's request for front pay damages in calculation of amount in controversy); *see also White v. FCI, Inc.*, 319 F.3d 674, 676 (5th Cir. 2003) (relying on the fact that plaintiff "was seeking continuing and future damages" in determining that the requisite amount in controversy was present) (citing *Gaus*, 980 F.2d at 566-67).

### B. Plaintiff's Alleged Damages For Emotional Distress, Punitive Damages And Attorney's Fees Must Be Factored Into The Amount In Controversy

As noted, Plaintiff seeks damages for emotional distress. (Cplt. ¶¶22, 26, 32). Indeed, he has purported to state a claim for intentional infliction of emotional distress. As to those damages, Plaintiff elaborates that he has endured "humiliation, financial hardship, mental anguish, and emotional distress" (*Id.*). Plaintiff also seeks punitive damages. He contends that he is entitled to such damages as a result of Defendant's conduct alleged to be "malicious, fraudulent and/or oppressive, and done with reckless disregard for Plaintiff's rights." (Cplt. ¶¶20, 33). Under California law, the amount Plaintiff can recover for compensatory and punitive damages are unlimited. *See, e.g., Commodore Home Systems, Inc. v. Superior Court*, 32 Cal.3d 211, 221 (1982).

Compensatory and punitive damages are appropriately considered in

determining whether it is "more likely than not" that the amount in controversy exceeds $75,000. *See, e.g. Bell v. Preferred Life Assurance Society* 320 U.S. 238, 240, 88 L.Ed. 15, 64 S.Ct. 5 (1943) (punitive damages are a component of the amount in controversy); *Lamke*, 319 F. Supp. 2d at 32 (emotional distress damages considering a component of the amount in controversy).

Courts have considered the nature of compensatory damages sought by plaintiffs in determining whether the amount in controversy exceeds the jurisdictional minimum. For example, in *White*, the court relied on the fact that, as in this case, the plaintiff sought to recover for "continuing and future" damages for "mental anguish and emotional distress." *White*, 319 F.3d, at 676.

Plaintiff's punitive damages claim further supports the conclusion that the amount in controversy requirement is satisfied. In *Wiemers v. Good Samaritan Society*, 212 F.Supp.2d 1042, 1047 (N.D.Iowa 2002), for example, the court looked to the nature of the allegations against the defendants and similar awards of punitive damages in other published opinions in determining that punitive damages when coupled with other out-of-pocket losses could satisfy the amount in controversy requirement. In the instant case, damages for emotional distress and punitive damages, as alleged, make up for the difference, if the Court deems that any exists, between Plaintiff's alleged out-of-pocket losses and the jurisdictional minimum.

C.  **At Minimum, The Court Should Permit Limited And Expedited Jurisdictional Discovery**

At the very minimum, the Court should permit limited jurisdictional discovery into Plaintiff's damages claims. In addition to his claim for lost wages and benefits, Plaintiff seeks calculable damages for, *inter alia*, attorney's fees. This Court has the discretion to allow limited jurisdictional discovery into Plaintiff's claim for such damages as well as his claim for other non-monetary damages. *See, e.g., Laub v. U.S. Dept. of the Interior*, 342 F.3d 1080, 93 (9th Cir. 2003) ("discovery should be granted when . . . the jurisdictional facts are contested or

4

more facts are needed"); *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) ("[d]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary"); *see also Lamke*, 319 F. Supp. 2d at 1032 (permitting limited jurisdictional discovery into Plaintiff's damages claim in diversity case). Such an order, if necessary, would, among other things, serve judicial economy, since Defendant would still be entitled to remove the case to federal court when it is established through such discovery in a state court proceeding that Plaintiff's asserted damages exceed $75,000. *See, e.g.,* 28 U.S.C. §1446(b) ("[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of [a] paper from which it may first be ascertained that the case is one which is or has become removable ....").

### III. CONCLUSION

Once all components of potential damages are appropriately considered, the Court's jurisdictional minimum is satisfied. Since the other elements for diversity jurisdiction are met, this Court has jurisdiction under 28 U.S.C. §1332.

Dated: March 21, 2008

CURIALE DELLAVERSON
HIRSCHFELD & KRAEMER, LLP

By: _____
Reed E. Schaper
Attorneys for Defendant
EDUCATION MANAGEMENT
CORPORATION

5

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE
CASE NO. 08CV434 BTM (POR)

# EXHIBIT A

# The Art Institute of California℠ - San Diego

## LETTER OF APPOINTMENT

## FULL-TIME FACULTY POSITION

July 1, 2006

Greg Campbell

The Art Institute of California – San Diego invites you to accept an appointment as a full-time instructor. In order to encourage excellence in our faculty, to clarify mutual goals of the institution and its faculty, and to comply with institutional obligations to our students, our accrediting commission, and our fiscal responsibility, the following information and guidelines have been developed to help you understand this appointment.

1. You will be paid an annualized salary of $ 50,000.00 to perform the duties described below and in the Faculty Job Description. In addition, you will receive employee benefits as outlined in the Employee Handbook.

2. The period of the appointment is **from July 1, 2006 to June 30, 2007**. You will be notified of the exact classes you are appointed to teach prior to the start of each quarter by the Academic Affairs Department. There will be an annual performance and salary review occurring on or around your review date, a date established by the Institute. Annual performance evaluations will be based on achievement of the Performance Expectations and the Key Job Elements of the Performance Planning and Appraisal Review (PPAR).

3. The teaching schedule for a full-time faculty member is described in the attached document. In addition to your teaching schedule, you will also be responsible for other professional obligations of an instructor (determined in conjunction with your Academic Director or Dean). Additional duties such as curriculum development, advising/tutoring students during regularly scheduled and posted or published office hours, out-of-class preparation and grading, committee work, attendance at appropriate functions, meetings and professional development, attendance at new faculty orientation meetings during your first year of appointment, and attending to the administrative functions of an instructor such as the timely submission of course syllabi in an approved form, the taking of daily attendance, the timely reporting of interim and final grades and the timely evaluation of student work will constitute the balance of your full-time commitment. At the Institute's discretion, a portion of contact hours may be designated non-teaching hours if your expertise is required for special projects. The Faculty Handbook, Faculty Job Description, and Faculty Development Plan include a more detailed explanation of professional obligations for faculty.

4. It is the intention of the Institute to continue your full-time appointment during each quarter of this appointment year pending satisfactory job performance and course availability. In the event of an enrollment shortfall that requires a reduction in staffing, retention of faculty will be based on a combination of professional expertise, credentials appropriate to respective curricular areas, the Institute's assessment of job performance, and length of service. The Institute will make every effort to give reasonable notice. The determination will be at the discretion of the Institute. It will not be based on the publication of your name as a faculty member assigned to a particular course of class schedule.

EXHIBIT A, PAGE 6

Full-Time Faculty
Letter of Appointment

1. The 12th or Administrative Week each quarter is for the purpose of evaluating the past quarter and preparing for the upcoming quarter. During the Administrative Week, faculty will work on school-related projects determined by the Academic Affairs Department including, for example, curriculum development, training and professional development, commencement activities, and department and school-wide meetings.

2. You are responsible for submitting a personal annual Faculty Development Plan, completed in conjunction with your Academic Director. The Plan lists all the courses you are credentialed to teach as defined by the Institute. The Plan will outline your strategy for remaining current and/or upgrading academic and professional credentials as well as plans for continued education in technology and pedagogy.

3. All student rosters, attendance forms, interim grade reports, assessments of student projects, syllabi and curricula prepared by you in conjunction with your assigned duties as a faculty member are always the property of the Institute. However, supplemental materials researched and developed outside of the Institute by the instructor remain the personal property of the instructor.

4. Your employment relationship with the Institute is in accordance with this Letter of Appointment and with the policies and practices as outlined in the Employee Handbook, the Faculty Development Plan, and the Faculty Handbook of the Institute.

If the terms of this appointment are satisfactory to you, please indicate by signing this letter and the attached Exhibit Sheet and Addendum and returning them to Renee Broadwell (Executive Assistant to Dean) by **August 1, 2006**.

Signed: _____   Date: 7-22-06
                    Instructor

Signed: _____   Date 7.22.06
                    Academic Director

Signed: _____   Date: 07/18/06
                    Dean of Academic Affairs

```
Fri Jul  7 2006                The Art Institute of California - San Diego                Page  21
11:37                         COURSE SCHEDULE BY FACULTY AND MEETING TIMES                schdfac
                                      For SU 2006 UG01 Catalog

             Time     Bldg Room  Days     Sec Ref No   Course        Course Title                    Alternate Cal
             ----     ---- ----  ----     --- ------   ------        ------------                    -------------
Faculty: Campbell, Greg                       114517
         1:00- 5:00PM  MAIN 176  -M-----   A   883 HU357   Ethics
         6:00-10:00PM  MAIN 176  -M-----   B   884 HU357   Ethics
         8:00-12:00PM  MAIN 173  ----R--   A   903 SB111   Anthropology
         1:00- 5:00PM  MAIN 173  ----R--   B   904 SB111   Anthropology
         1:00- 5:00PM  MAIN 147  -----F-   C   905 SB111   Anthropology
```

## LETTER OF APPOINTMENT ATTACHMENT
### THE ART INSTITUTE OF CALIFORNIA – SAN DIEGO

### EXHIBIT 1

### SUMMER 2006

### *GREG CAMPBELL*

\*Total Pay:  $          12,500.00


\*Your total pay will be divided among seven pay periods.

| Pay Periods | Pay Dates |
|---|---|
| July 1-14, 2006 | July 21, 2006 |
| July 15-28, 2006 | August 4, 2006 |
| July 29-August 11, 2006 | August 18, 2006 |
| August 12-25, 2006 | September 1, 2006 |
| August 26-September 8, 2006 | September 15, 2006 |
| September 9-22, 2006 | September 29, 2006 |
| September 23-October 6, 2006 | October 13, 2006 |

If the terms of this appointment are satisfactory to you, please indicate by signing this Exhibit Sheet and the attached Letter of Appointment and Addendum (if applicable) and returning them to Renee Broadwell (Executive Assistant to Dean) by **August 1, 2006**.

Signed: _[signature]_     Date: 7-27-06
         *Instructor*

Signed: _[signature]_     Date: 7-26-06
         *Academic Director*

Signed _[signature]_      Date: 07/21/06
         *Dean of Academic Affairs*

EXHIBIT A, PAGE 8

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I, the undersigned, am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 2425 Olympic Boulevard, Suite 550 East Tower, Santa Monica, California 90404. On March 21, 2008, I served the following document(s) by the method indicated below:

RESPONSE OF DEFENDANT EDUCATION MANAGEMENT CORPORATION TO ORDER TO SHOW CAUSE RE: JURISDICTION ON REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(B)

☐ by transmitting **via facsimile** on this date from fax number (310) 255-0986 the document(s) listed above to the fax number(s) set forth below. The transmission was completed before 5:00 p.m. and was reported complete and without error. Service by fax was made by agreement of the parties, confirmed in writing. The transmitting fax machine complies with Cal. R.Ct 2003(3).

☒ by placing the document(s) listed above in a sealed envelope(s) with postage thereon fully prepaid, in the **United States mail** at Santa Monica, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited in the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ by placing the document(s) listed above in a sealed envelope(s) and by causing **messenger delivery** of the envelope(s) to the person(s) at the address(es) set forth below. I am readily familiar with the business practice of my place of employment with respect to the collection and processing of correspondence, pleadings and notices for hand delivery. On March 21, 2008, I caused to be served via messenger the above-listed documents.

☐ by **personally delivering** the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by placing the document(s) listed above in a sealed envelope(s) and consigning it to an **express mail service** for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below.

Joshua D. Gruenberg, Esq.
LARABEE & GRUENBERG
2169 First Avenue
San Diego, CA 92101
Telephone: (619) 230-1234
Facsimile: (619) 230-1074

Zachary T. Tyson, Esq.
TYSON & TYSON, LLP
2550 Fifth Avenue, 9th Floor
San Diego, CA 92103
Telephone: (619) 237-9292
Facsimile: (619) 615-2173

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on March 21, 2008, at Santa Monica, California.

*/s/ Robbin DeRuisé*
Robbin T. DeRuisé

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE
CASE NO. 08CV434 BTM (POR)